IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:11-CV-3-BO

| | |
|---|---|
| SIGMA CAPITAL GROUP, INC. and BLUE HARBOR ENERGY, L.L.C., ) ) ) Plaintiffs, ) ) v. ) ) ) THERMAL VENTURES, INC., CARL ) AVERS, as President and CEO of Thermal ) Ventures, Inc., CARL AVERS, ) individually, YOUNGSTOWN TRUST ) 2007, and PRISCILLA A. AVERS, as ) Trustee of Youngstown Trust 2007, ) ) Defendants. ) | **MEMORANDUM AND RECOMMENDATION** |

This case comes before the court on the motion (D.E. 80) by plaintiffs Sigma Capital Group, Inc. ("Sigma") and Blue Harbor Energy, LLC ("Blue Harbor Energy") (collectively "plaintiffs") for sanctions against defendants Thermal Ventures, Inc. ("Thermal Ventures"), Carl Avers, Youngstown Trust 2007 ("Youngstown Trust"), and Priscilla Avers (collectively "defendants"). It was referred to the undersigned for a memorandum and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). (D.E. 90). The motion has been fully briefed[1] and the court held a hearing on it on 18 July 2012 (*see* D.E. 94). For the reasons set forth below, it will be recommended that the motion be denied.

---

[1] In support of their motion for sanctions, plaintiffs filed a number of exhibits (D.E. 80-1 through 80-14). Pro se defendant Carl Avers filed a memorandum in opposition (D.E. 86) with exhibits (D.E. 86-1 through 86-4). Plaintiffs filed a reply (D.E. 88) with exhibits (D.E. 88-1 through 88-9). Counsel for defendants filed a surreply (D.E. 93).

## BACKGROUND

### I. Plaintiffs' Claims

According to the complaint, Sigma is an investment bank that provides project financing. (Compl. (D.E. 10) ¶ 17). Blue Harbor Energy is a Michigan corporation. (*Id.* ¶ 18). On 21 March 2009, Sigma and Blue Harbor Energy entered into a contract entitled "Joint Project Evaluation and Development Agreement" with Thermal Ventures and Youngstown Trust 2007 to combine the parties' resources to locate and initiate energy savings projects. (*Id.*). Carl Avers is the president and chief executive officer of Thermal Ventures. (*Id.* ¶ 8). Priscilla Avers, Carl Avers' wife, is the trustee of Youngstown Trust. (*Id.* ¶¶ 9, 10). Thermal Ventures also entered into an "Engagement Letter" with Sigma that provided for Sigma to be Thermal Ventures' exclusive financial services provider for a two-year period. (*Id.* ¶ 20).

The parties initially identified at least five projects that were to be housed in special purpose limited liability companies with stated ownership interests. (*Id.* ¶ 19). In August of 2009, Blue Harbor and Youngstown Trust entered into contracts relating to specific projects. (*Id.* ¶¶ 19, 22, 23). Plaintiffs allege that defendants misled them and consistently failed to fulfill the obligations under the parties' various agreements. (*See, e.g., id.* ¶¶ 25, 27, 34, 42).

In their complaint, plaintiffs assert claims for: (1) fraud (*id.* ¶¶ 51-57); (2) defamation and damage to reputation (*id.* ¶¶ 58-62); and (3) breach of contract (*id.* ¶¶ 63-71). Plaintiffs seek compensatory damages, punitive damages, and attorney's fees. (*Id.* ¶¶ 72-75; Prayer for Relief). Defendants deny the material allegations of plaintiffs' complaint. (*See generally* Ans. to Compl. (D.E. 31)).

## II. Discovery and Related Proceedings

Plaintiffs served on defendants their first set of interrogatories and requests for production of documents on 14 February 2011. (D.E. 75-1). The court entered its initial scheduling order on 20 May 2011, setting a discovery deadline of 30 November 2011. (D.E. 42 ¶ 1). Defendants served responses to plaintiffs' discovery on 5 July 2011. (D.E. 75-3).

On 5 August 2011, the court filed an amended scheduling order on the parties' joint motion extending the discovery deadline to 30 December 2011. (D.E. 57 ¶ 1). On 2 September 2011, plaintiffs served on defendants their second set of interrogatories and requests for production of documents. (D.E. 75-2). Defendants served responses on 7 November 2011. (D.E. 75-5).

On 22 November 2011, defense counsel filed a motion for permission to withdraw from the case (D.E. 69), which the court allowed by order entered on 30 November 2011 (D.E. 70). Also on 22 November 2011, the court entered an Amended Consent Protective Order (D.E. 68), which provided for protection of materials produced by third parties. Plaintiffs contend that defendants failed to sign, as their counsel purportedly agreed they would, the form Undertaking to be Bound attached to the order which would purportedly have enabled plaintiffs to obtain discovery sought from a particular third party. After withdrawal of their counsel, defendants allegedly failed otherwise to communicate with plaintiffs regarding discovery. On 12 December 2011, the court entered a further amended scheduling order on plaintiffs' motion extending the discovery deadline to 2 March 2012. (D.E. 72 ¶ 1).

On 20 February 2012, plaintiffs filed a motion (D.E. 75) to compel further responses to both the first and second sets of their discovery requests. The court heard argument on that motion at the

3

18 July 2012 hearing and entered an oral order (*see* D.E. 94) providing for further proceedings on it, which are still pending.

On 23 February 2012, plaintiffs moved for amendment of the scheduling order based on defendants' continued nonparticipation in discovery. (D.E. 74). On 27 February 2012, the court allowed the motion, extending the discovery deadline to 4 May 2012. (D.E. 77 ¶ 1). The court directed the corporate defendants to retain counsel no later than 23 March 2012. (D.E. 77 ¶ 5). Defendants did not do so by that deadline.

A mediation in this case was scheduled for 28 March 2012. It was postponed until 21 May 2012 purportedly because of the mediator's inability to reach defendants to confirm arrangements for the mediation. The mediation was subsequently postponed beyond 21 May 2012.

### III. Motion for Sanctions

On 29 March 2012, plaintiffs filed the instant motion. As noted, the court heard argument on it on 18 July 2012. About two hours before the hearing began, counsel for all defendants entered his appearance (D.E. 92).

Plaintiffs cite several acts of purported misconduct by defendants as the basis for their motion. These include defendants' failure to sign the Undertaking to be Bound regarding third-party discovery; defendants' failure otherwise to actively participate in discovery, requiring plaintiffs to obtain extensions of the case schedule and file their motion to compel; the corporate defendants' failure to retain counsel by 23 March 2012 as directed; and defendants' failure to communicate with the mediator, requiring postponement of the 28 March 2012 mediation.

Plaintiffs ask the court to find defendants in contempt of the court's 27 February 2012 order directing the corporate defendants to retain counsel. Plaintiffs also ask the court to find that

4

defendants have failed to defend this action in good faith and as required by law, and that plaintiffs have been prejudiced as a result. Plaintiffs further request that defendants' answer to the complaint be stricken, attorney's fees be awarded, and judgment be entered against defendants in favor of plaintiffs.

## **DISCUSSION**

Local Civil Rule 10.1(e), E.D.N.C., requires that a motion identify the rule or statute on which it is based. In violation of this provision, plaintiffs' motion does not identify the legal authority on which it is grounded, and it is not otherwise apparent. Plaintiffs thereby have left it to the court to attempt to discern what, if any, legal basis exists for their motion. Such noncompliance with the local rules can merit summary denial of a motion. The court considered that option here, but in its discretion has decided to address the motion on its merits and take on the task of identifying a possible legal basis for the motion. The court's willingness to do so in this specific instance should not be misconstrued as condonation of plaintiffs' noncompliance or an indication that any further noncompliance will be addressed in a similar fashion.

It appears that plaintiffs are not moving pursuant to Rule 55, which allows for the entry of default and default judgment against a party that has failed to defend itself in an action. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir.1982) ("Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules."). Before the entry of a default judgment by the court, the moving party must obtain an interlocutory entry of default from the clerk of court pursuant to Rule 55(a) and only after the entry of default, may the nondefaulting party move for default judgment under Rule 55(b). *Khepera-Bey v. Santander Consumer USA, Inc.,* No. WDQ-11-1269, 2012 WL 1965444, at *6 n.20

Case 5:11-cv-00003-BO   Document 105   Filed 08/24/12   Page 5 of 12

(D. Md. 30 May 2012) ("A plaintiff cannot obtain default judgment without first obtaining an entry of default against the defendant."); *Romero v. Barnett*, No. DKC 09-2371, 2011 WL 1938147, at *3 (D. Md. 20 May 2011) ("Having failed to obtain a clerk's entry of default, pursuant to Fed. R. Civ. P. 55(a), Plaintiff is not eligible for entry of default judgment under Fed. R. Civ. P. 55(b)."). Here, plaintiffs have not obtained an entry of default from the clerk of court and, therefore, to the extent that plaintiffs did intend to proceed pursuant to Rule 55, such attempt fails.

The court has also considered whether plaintiff's motion could rest on the civil contempt power of the court. The court concludes that it does not.

In order to establish an entitlement to civil contempt, a party must establish by clear and convincing evidence: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's 'favor'; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and (4) that the movant suffered harm as a result." *Stern v. Shelley*, 4:08–cv–02753–JMC, 2010 WL 4721708, at *2 (D.S.C. 12 Nov. 2010) (citing *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)). The remedies for civil contempt are remedial or compensatory in nature—to coerce obedience to a court order or provide the movant with a compensatory award—and are not intended to be punitive. *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) ("Although courts have broad discretion in fashioning remedies for civil contempt, which include 'ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees,' remedies and sanctions must be limited to either a remedial or compensatory purpose."). Because the central remedy plaintiffs seek here, striking of defendants' answer, would be punitive, civil contempt is inapplicable. *Stern,* 2010 WL 4721708, at *4 (citing

6

*Hovey v. Elliot*, 167 U.S. 409, 413–14 (1897) (noting that the court does not have the inherent power to strike a defendant's answer as punishment for civil contempt of court)). In any event, the object of the court's directive in its 27 February 2012 order that the corporate defendants retain counsel has been achieved.

It also does not appear that plaintiffs are seeking criminal contempt pursuant to Fed. R. Crim. P. 42. Under that rule, before criminal contempt sanctions may be imposed for conduct not occurring in the presence of the court (as here), the court must give notice to the offending party and appoint a prosecutor for the government to prosecute the contempt. Fed. R. Crim. P. 42(a)(1), (2). A person being prosecuted for criminal contempt is entitled to a jury trial. *Id.* (a)(3). Here, plaintiffs make no request for the appointment of a prosecutor and/or a jury trial in their motion for sanctions, as would be expected if they were proceeding under Criminal Rule 42.

The court believes that authority for the motion can be found in Rules 16 and 37. Rule 16(f)(1)(C) provides in pertinent part:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
> . . . .
> (C) fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f)(1)(C).

The order directing defendants to retain counsel is, of course, a pretrial order and therefore falls squarely under this provision. Defendants violated this order by not retaining counsel by the specified deadline. Therefore, under Rule 16(f)(1)(C), this violation subjects them to the range of sanctions provided for under Rule 37(b)(2)(A)(ii)-(vii).

In addition, Local Civil Rule 101.1d(h) authorizes sanctions for misconduct in connection with a mediation. It provides:

7

> If a person . . . engages in misconduct during or otherwise in connection with a mediated settlement conference, the court may impose on that person (and any associated party) any sanction authorized by Fed. R. Civ. P. 37(b) and any other lawful sanction, including, but not limited to, the imposing of the cost of attorney's fees, mediator's fees, and expenses of persons incurred in attending the conference.

Local Civ. R. 101.1d(h), E.D.N.C. Thus, this local rule provides a basis for imposing sanctions against defendants under Rule 37(b), along with other sanctions, in connection with postponement of the 28 March 2012 mediation.[2]

The sanctions authorized by Rule 37(b) include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," or "treating as contempt of court the failure to obey any order. " Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (v), (vii). In addition, Rule 37(b) provides that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Whether to impose sanctions pursuant to Rule 37 is a matter within the court's wide discretion. *Mut. Fed. Sav. & Loan v. Richards & Assocs.,* 872 F.2d 88, 92 (4th Cir. 1989). When, however, "the sanction involved is judgment by default, the district court's 'range of discretion is more narrow.'" *Buckner v. United Parcel Service, Inc.,* 5:09–CV–411–BR, 2012 WL 1596726, at *8 (E.D.N.C. 7 May 2012) (quoting *Mut. Fed. Sav. & Loan,* 872 F.2d at 92).

---

[2] The scheduling order and amendments to it also come within the plain terms of Rule 16(f)(1)(C). In addition, they are arguably orders "to provide or permit discovery" within the meaning of Rule 37(b)(2)(A). *See Hatchcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). Violation of an order "to provide or permit discovery" subjects a party to the sanctions provided for in Rule 37(b), irrespective of Rule 16. Nevertheless, plaintiffs have not convincingly shown that defendants did violate the scheduling order. Therefore, violation of the scheduling order and the amendments to it do not comprise a basis for application of sanctions under Rule 37(b).

Before entering a default judgment under Rule 37 as a sanction, the court must consider four factors: "(1) whether the noncomplying party acted in bad faith; (2) the degree of prejudice suffered by the other party or parties as a result of the failure to comply; (3) the deterrence value of dismissal as a sanction for noncompliance; and (4) the efficacy of a less drastic sanction." *Malhotra v. KCI Tech., Inc.*, 240 Fed. Appx. 588, 590 (4th Cir. 2007) (citing *Mut. Fed. Sav. & Loan,* 872 F.2d at 92); *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998); *Bird v. Mosaic Global Solutions, LLC*, No. 2:08–3845–RMG, 2010 WL 4156364, at *2 (D.S.C. 14 Sept. 2010). The law requires the court to impose sanctions less severe than default judgment if appropriate. *Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir. 1995).

As noted, the specific misconduct sanctionable under Rule 37(b) demonstrated by plaintiffs is the corporate defendants' failure to retain counsel by the court-imposed deadline and defendants' failure to respond to the mediator about the mediation set for 28 March 2012. Plaintiffs filed the motion for sanctions a few days after the deadline for the corporate defendants' retention of counsel had passed. Therefore, at the time of filing, plaintiffs had not suffered significant prejudice from the corporate defendants' noncompliance with the order. In addition, an order directing certain parties to retain counsel is not one providing a direct benefit to opposing parties, like, for example, an order compelling production to the opposing parties, such that violation of the order would necessarily prejudice the opposing parties. Further, plaintiffs delayed in filing their motion to compel. Defendants' responses to the first set of discovery were served in July 2011 and to the second set in early November 2011, whereas plaintiffs filed their motion to compel in late February 2012.

Nevertheless, the ongoing failure by the corporate defendants to retain counsel did, as a practical matter, contribute to the delay in discovery proceedings. It is also possible, as plaintiffs

9

contend, that defendants' noncompliance is responsible to some degree for plaintiffs' incurring the cost of obtaining from third parties information and documents requested in discovery from defendants.

The corporate defendants' failure to retain counsel timely also appeared to underlie defendants' failure to communicate with the mediator regarding the mediation set for 28 March 2012. However, plaintiffs have not convincingly demonstrated prejudice arising from the resulting postponement of the mediation. The postponement apparently came sufficiently in advance of the mediation date to enable plaintiffs to avoid any costs of attendance at it.

The specific acts of sanctionable misconduct were, of course, accompanied by other acts of apparent noncompliance by defendants. *See Mann v. Swiggett*, No. 5:10-CV-172D, 2012 WL 1579323, at *3 (E.D.N.C. 4 May 2012) (recognizing pattern of misconduct as factor in striking defendant's answer as a sanction, including "the volume of frivolous filings that defendant continues to make in this case, defendant's refusal to comply with this court's orders and local rules, and defendant's bad faith"). These include their failure to execute the form Undertaking to be Bound that accompanies the Amended Consent Protective Order, failure otherwise to participate in discovery, and pattern of lack of adequate communication with the mediator. The record suggests that defendant Carl Avers may bear substantial responsibility for the noncompliance of the defendants as a whole in light of his ties to the other defendants, although the record does not enable the court to determine that definitively.

Notwithstanding these considerations, the court does not believe plaintiffs have shown that the imposition of sanctions pursuant to the instant motion is warranted. Any discovery-related expenses incurred by plaintiffs that are properly attributable to the corporate defendants' wrongdoing

can appropriately be awarded pursuant to plaintiffs' motion to compel. Such expenses appear to be the principal prejudice that plaintiffs contend they have suffered.

In addition, plaintiffs have not made a strong showing of bad faith, although there are certainly some indicia of it. For example, the corporate defendants have not justified their failure to comply timely with the retention order. Nor have the defendants, collectively, justified their failure to follow up on their prior counsel's commitment to sign the undertaking to be bound. On the other hand, plaintiffs have not convincingly shown that, to the extent there are deficiencies in defendants' discovery responses, they are so great as to manifest bad faith.

Moreover, new counsel for defendants is now onboard and outstanding discovery issues are on the way to being resolved, either by the parties or the court. Specifically, at the 18 July 2012 hearing, defense counsel agreed to familiarize himself with the case quickly to enable it to move forward expeditiously. He also assured the court that defendants would promptly and on a rolling basis carry out all commitments by defendants' prior counsel to produce documents and information. In addition, defense counsel agreed to confer with plaintiffs' counsel about resolution of the issues raised by plaintiffs' motion to compel and about development of a proposed schedule for the remainder of the case. The court entered an oral order at the hearing imposing requirements and deadlines consistent with these representations. (D.E. 94).

Although it does not appear that there will be a recurrence in this case of the type of misconduct by defendants plaintiffs allege, defendants' exposure for expenses on the motion to compel should act as significant deterrent to a recurrence. Further, at the 18 July 2012 hearing, the court admonished defense counsel and Mr. Avers that the court expected parties to comply with its

orders and that it would take into consideration defendants' prior history in this case if there were to be future noncompliance.

The court concludes that plaintiffs' motion for sanctions should be denied. *See, e.g.*, *Robinson v. Green*, No. 4:07-1077-HMH-TER, 2007 WL 4124535, at *1 (D.S.C. 19 Nov. 2007) (denying motion to strike answer where no evidence that defendant acted in bad faith or that plaintiff had been prejudiced). The court further concludes that the circumstances presented, including specifically plaintiffs' failure to comply with Local Civil Rule 10.1(e), would make the award of expenses to them unjust. *See* Fed. R. Civ. P. 37(b)(2)(C). Each party should therefore bear its own costs in connection with plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, it is recommended that plaintiffs' motion for sanctions (D.E. 80) be denied and that no expenses be awarded on the motion.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any responses to objections shall be filed within 14 days after service thereof.

SO ORDERED, this the 23rd day of August 2012.

_____
James E. Gates
United States Magistrate Judge